NOTICE
Decision filed 02/18/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 241101-U

NO. 5-24-1101

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| *In re* RILEY R., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Coles County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 24-JA-15 |
| | ) | |
| Amanda L., | ) | Honorable |
| | ) | Jonathan T. Braden, |
| Respondent-Appellant). | ) | Judge, presiding. |

JUSTICE MOORE delivered the judgment of the court.
Presiding Justice McHaney and Justice Cates concurred in the judgment.

**ORDER**

¶ 1　*Held*:　The dispositional order of the circuit court of Coles County that found it to be in the best interest of Riley R. to be made a ward of the court and placed in the custody and guardianship of the Department of Children and Family Services is affirmed because the circuit court's findings were not against the manifest weight of the evidence and the selected disposition was not an abuse of discretion.

¶ 2　The respondent, Amanda L. (Mother), appeals the circuit court of Coles County's September 18, 2024, dispositional order that found it in the best interest of the respondent's biological child, Riley R., to make him a ward of the court and placed him in the custody and guardianship of the Department of Children and Family Services (DCFS). For the following reasons, we affirm.

¶ 3　　　　　　　　　　　　I. BACKGROUND

¶ 4　This case began with the filing, on June 17, 2024, of, *inter alia*, a petition for adjudication

1

of wardship[1] regarding Riley R., who was born in August 2021. The petition alleged that Riley R. was a neglected minor in that he was not receiving the proper and necessary support or other remedial care necessary for his well-being for one or more of the following reasons: (1) the respondent mother has, for a consistent period of time prior to the filing of the petition, used various illegal drugs, including methamphetamines, leading to the involvement by DCFS; (2) the respondent father had a drug overdose while the minor was in his care; (3) subsequent to DCFS involvement, both parents were presented with a safety plan and neither parent has endorsed the safety plan; and (4) subsequent to DCFS involvement, the respondent mother tested positive for continued use of methamphetamines, and drug paraphernalia was found in the home in areas the minor had access to it.

¶ 5      An adjudicatory hearing was held on July 12, 2024. At the adjudicatory hearing Mother made a knowing and voluntary stipulation that Riley R. was neglected as defined by section 2-3 of the Juvenile Court Act of 1986 (705 ILCS 405/2-3 (West 2020)). Mother admitted that Riley R. was not receiving the proper necessary support or other remedial care necessary for his well-being and that he was in an environment that was injurious to his welfare.

¶ 6      A dispositional hearing was scheduled and continued several times. The dispositional hearing was conducted on September 18, 2024. At the dispositional hearing the State relied on the information contained in the dispositional report prepared by DCFS on July 24, 2024, an addendum to the disposition report dated August 14, 2024, an addendum to the disposition report dated September 10, 2024, and the attachments to those reports that had previously been submitted to the court. The circuit court took judicial notice of the aforementioned documents without objection from either parent.

---

[1]The State proceeded simultaneously against Alan R., the legal father of Riley R., who appealed separately in No. 5-24-1102.

¶ 7    Mother testified on her own behalf. She testified that DCFS was involved with Riley R. due to Alan R.'s "incident," which occurred on April 19, 2024. Mother testified that she guessed that Alan had a seizure while making dinner, and he received third degree burns to his arms. Mother testified that she was at work at the time of the incident and was contacted at approximately 8:45 p.m. and told she needed to get home to her son.

¶ 8    Mother testified that she was drug tested on April 29, 2024, and that she notified Ms. Stodden, a DCFS investigator, that she had relapsed on April 27, 2024. Mother testified that the last time "she used" was on July 13, 2024, following the adjudicatory hearing in this case. She received a positive drug test on July 24, 2024. Mother testified that since this time, her drug tests have been negative.

¶ 9    Mother testified that Riley R. has special medical needs. Previously, he was tested yearly for neurofibromatosis. In March of 2024, Riley R. was given "the all clear," and now only needs to be tested every two years. Mother testified that Riley R. also has severe attention-deficit/hyperactivity disorder (ADHD) and a learning disability. She testified that she has attended every individualized education program (IEP) meeting regarding Riley R.'s schooling.

¶ 10    Mother testified that she completed her mental health assessment approximately two or three weeks prior to the hearing and has been seeing a counselor once a week. Mother testified that she completed a domestic violence assessment. Mother testified that she was receiving substance abuse services during the intact portion of the case, but that she had a "hiccup" with that, and should be back into those services on September 22.

¶ 11    Mother testified that she thought she is able to offer a loving, supportive, and diligently caring home for Riley R. She testified that it was her belief that it was in Riley R.'s best interest to be returned home.

3

¶ 12    On cross-examination, Mother acknowledged that the police found approximately 21 different items of drug paraphernalia in the home she shared with Riley R. and Alan R., and that some of the items testified positive for methamphetamine. She also testified that Alan R. has pending criminal charges for possession of methamphetamine from a date other than the incident at home. Mother also testified that she is looking for new housing because Riley R. is fearful because of what happened at the home.

¶ 13    Next, Alan R. (Father) testified on his own behalf. Father testified that on April 18, 2024, he had been outside using a power washer. He then went inside and was cooking bratwurst on the stove while Riley R. was in the shower. The next thing Father remembered was waking up in the hospital the following day. He suffered extensive burns from his elbows to fingers. He testified that he has not been provided with a definitive answer regarding what happened. He also testified that his drug screenings in the hospital were negative.

¶ 14    After being discharged from the hospital, Father spoke with DCFS. He testified that Mother had already started a safety plan, but DCFS wanted them to start over.

¶ 15    Father testified that he has completed a drug assessment and attends group sessions three times a week as well as a counseling session one time a week. Father testified he was asked to have a mental health assessment and domestic violence assessment, but he was unable to do these without first having an integrated assessment. He testified that he received a telephone call in the days leading up to the hearing to schedule the integrated assessment.

¶ 16    Father testified that he has been taking drug tests. He had received one positive drug test, but did not recall the date, and the remainder had been negative.

¶ 17    Father testified that he missed Riley R. and he would like him to be returned to his care.

¶ 18    Father was questioned regarding two drug tests he missed. He testified that he missed one

because it was after a court hearing, and the other testing he believed was against the DCFS handbook because he was already being tested as part of his group therapy.

¶ 19    Following the conclusion of testimony, the State argued that Riley R. be ordered under the guardianship and custody of DCFS. The child's court appointed special advocate (CASA) agreed and noted the parents need continuing treatment for mental health, drug addiction, and domestic violence. The parents argued that they have complied with services and Riley R. should be returned to their care.

¶ 20    The circuit court, *inter alia*, made the following oral pronouncements:

> "There's an overwhelming amount of drugs and paraphernalia contained in the home—the home where Riley resided in. And throughout the life of this case up to this point, we've heard the testimony today that both parents continued methamphetamine use up through the end of July. So, roughly a month-and-a-half up to this date, but continued meth use after the temporary custody hearing, after an adjudicatory hearing.

> And the evidence today presented is—and it's encouraging evidence from [Mother] and [Father] that they have begun engaging in some of the evaluations and treatment related to this case. And that's a positive thing to have a child to return to you as early engagement in services.

> But simply, there's—there's just no—no way that this Court could find that based on the limited engagement that we've had up to this point, that these conditions have been corrected. Riley was neglected due to the ongoing substance abuse in this case. And the Court cannot find that that substance abuse treatment has had any opportunity to be meaningfully-engaged in.

> So, I am going to find it's in Riley's best interest that he be made a ward of the

5

Court and that custody and guardianship be given to DCFS. The services recommended in the dispositional report are appropriate and the Court [is] going to order the parents to engage in those services."

¶ 21    The circuit court entered an order of disposition on September 18, 2024, finding that it was in the best interest of Riley R. that guardianship and custody be placed with DCFS. Mother filed a timely notice of appeal on October 8, 2024.

¶ 22                                II. ANALYSIS

¶ 23    The Juvenile Court Act of 1987 (705 ILCS 405/1-1 *et seq.* (West 2020)) provides a step-by-step process to be used in determining whether a child should be removed from his or her parents and made a ward of the court. *In re Arthur H.*, 212 Ill. 2d 441, 462 (2004). The first step of the process begins with the State filing a petition for wardship. *Id.* Then, a temporary custody hearing is conducted at which the court must "determine whether there is probable cause to believe that the child is neglected, whether there is an immediate and urgent necessity to remove the child from the home and whether reasonable efforts have been made to prevent the removal of the child or that no efforts reasonably can be made to prevent or eliminate the necessity of removal." *Id.* If probable cause is found, the child is placed in temporary custody and the process continues. *Id.*

¶ 24    The second step of the process, the adjudicatory hearing, requires the court to determine whether the child was the subject of abuse, neglect, or dependence. *Id.* If the State fails to prove the allegations of abuse, neglect, or dependence by a preponderance of the evidence, the petition must be dismissed. *Id.* at 464.

¶ 25    If a finding of abuse, neglect, or dependence is made, the third step is reached, at which point the circuit court must hold a dispositional hearing. 705 ILCS 405/2-21(2) (West 2020).

"At the dispositional hearing, the court shall determine whether it is in the best interests of the minor and the public that he be made a ward of the court, and, if he is to be made a ward of the court, the court shall determine the proper disposition best serving the health, safety and interests of the minor and the public. The court also shall consider the permanency goal set for the minor, the nature of the service plan for the minor and the services delivered and to be delivered under the plan. All evidence helpful in determining these questions, including oral and written reports, may be admitted and may be relied upon to the extent of its probative value, even though not competent for the purposes of the adjudicatory hearing." *Id.* § 2-22(1).

"The purpose of a dispositional hearing is not to terminate parental rights." *In re April C.*, 326 Ill. App. 3d 225, 237 (2001). Rather, "a dispositional hearing serves the purpose of allowing the circuit court to decide what further actions are in the best interests of a minor, and the hearing and ruling on whether to make a minor a ward of the court gives the parents 'fair notice of what they must do to retain their rights to their child' in the face of any future termination proceedings." *Id.*

¶ 26     "Cases involving abuse, neglect and wardship are *sui generis*; each case must be decided on its own distinct set of facts and circumstances." *In re M.W.*, 386 Ill. App. 3d 186, 197 (2008). "Though the court, when making the wardship determination, considers the specific parent's capability to care for the child, *** the wardship determination is based on the best interest to the child when considering the totality of the circumstances surrounding the child's life." *In re D.S.*, 2018 IL App (3d) 170319, ¶ 15.

¶ 27     The circuit court's findings regarding wardship and fitness at the dispositional hearing stage are given great deference because it has the best opportunity to view and evaluate the parties and their testimony. *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1064 (2006); *In re T.B.*, 215 Ill. App.

7

3d 1059, 1061 (1991). Because a trial court is in a superior position to assess the credibility of witnesses and weigh the evidence, a reviewing court will not overturn the circuit court's findings merely because the reviewing court may have reached a different decision. *In re Lakita B.*, 297 Ill. App. 3d 985, 994 (1998). A circuit court's determination of wardship or fitness will be reversed "only if the factual findings are against the manifest weight of the evidence." *In re Kamesha J.*, 364 Ill. App. 3d 785, 795 (2006). A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly apparent. *In re C.N.*, 196 Ill. 2d 181, 208 (2001).

¶ 28    Following a determination of wardship and a finding that the parents are unfit, the circuit court is tasked with determining a disposition that best serves the minor's interests. *In re Al. S.*, 2017 IL App (4th) 160737, ¶ 40.

> "Under section 2-27(1) of the Juvenile Court Act, the trial court may commit a minor to DCFS wardship if it determines that the parent is unfit or unable, for some reason other than financial circumstances alone, to care for, protect, train, or discipline the minor and that the health, safety, and best interests of the minor will be jeopardized if the minor remains in the custody of the parent. [Citation.] *** The health, safety and interests of the minor remain the guiding principles when issuing an order of disposition regarding the custody and guardianship of a minor ward. [Citation.] The trial court's determination will be reversed only if the factual findings are against the manifest weight of the evidence or if the court abused its discretion by selecting an inappropriate dispositional order. [Citation.]" *In re Kamesha J.*, 364 Ill. App. 3d at 795.

A circuit court "abuses its discretion when no reasonable person would agree with its decision." *In re M.P.*, 408 Ill. App. 3d 1070, 1073 (2011).

¶ 29    On appeal, Mother points to the progress she had made at the time the dispositional hearing

8

was conducted to support her position that Riley R. should not have been made a ward of the court and placed in the custody and guardianship of DCFS. Evidence was presented at the dispositional hearing that Mother was complying with the recommended services; however, it was premature to assess Mother's overall progress.

¶ 30    Based on the totality of the circumstances, we find that a result opposite to that reached by the circuit court as to wardship and fitness was not clearly apparent and the result reached by the circuit court was supported by the evidence. It was not an abuse of discretion for Riley R. to be placed in the custody and guardianship of DCFS.

¶ 31    Affirmed.